(Superior Court of Cincinnati.)
General Term.

FRED. HASSELMEYER v. THE AVONDALE LOAN & BUILDING CO.

HIEATT EDWARDS v. THE AVONDALE LOAN & BUILDING CO.

(Superior Court of Cincinnati.)
W. A. HICKS, Trustee, v. JOHN H. GRUSSEL et al.

(1). Where property is taken by the sheriff under a writ of attachment, and by him placed in the possession of a keeper, such keeper's possession is the possession of the sheriff. Root v. Railroad Co., 45 Ohio St., 222.

(2). Where, after levy of an attachment on the debtor's stock of goods, an arrangement is made between all the parties to such attachment suit whereby the debtor is permitted to continue to make sales at current retail prices in the usual way, the proceeds to be turned over to the sheriff or the keeper whom he had placed in possession of the goods and store under the levy of the attachment, such an arrangement is an "innocent and laudable one." (12 Mass., 152).

(3). To permit the attachment debtor to sell or dispose of attached property would tend to prove an attachment fraudulent, but not conclusively so, and it would not be so where the sheriff sells with the consent of all the parties to the suit. An outside creditor cannot complain of such an arrangement unless he can show that he was mislead and deceived by the acts of the officer.

(See also Synopsis of decision reported in 8 N. P., p. 73.)

DEMPSEY, J.

This is an action to determine the rights of John H. Grussel and W. A. Hicks, trustee, to a fund now in the hands of the sheriff, by virtue of an attachment issued, levied, and a sale thereunder, at the instance of said Grussel.

Grussel had brought suit against Poll for about $2,600; an attachment was levied upon the real and personal estate of Poll, the personal estate being his business place of tailoring, and the stock of goods and merchandise in the store where the business was conducted. The attachment was levied about March 3, 1898, and continued at the business place until about August 14, 1898, when the goods were removed to an auction house and sold out; this sale occurred

August 24th, 1898. On August 20th, an execution was levied in favor of Hicks on all of the property taken under the attachment, save such as had been sold by the sheriff between March 3rd and August 20th, as hereinafter set forth. At the time of the levy, the sheriff placed in possession and control of the personal property one Klug, who remained in possession until after the removal thereof to the auction house. At the time of the levy of the attachment, Poll was anxious to extricate himself from his embarrassments, and an understanding was entered into between him, Grussell and the sheriff, with regard to the goods and merchandise in the store. What the purport and effect of this understanding was, is the real question in this case, and that is to be settled by the evidence.

The plaintiff claims that the arrangement was that Poll should continue his business, using the store and fixtures therein, just as he had always done, but that he should turn over to the sheriff the money received from the business after payment of expenses. The defendants' claim is that the arrangement was that the plaintiff, by consent of all parties in the attachment case, was permitted to make sales in the usual way at the then current retail prices, the proceeds being turned over to the sheriff. That the man Klug was in actual, notorious and continuous possession of the store and its contents, practically night and day, is perfectly clear to my mind from the evidence, and I enter into no discussion of the contentions on that point.

As to the agreement, the evidence does not warrant the deduction that Poll was to continue the business on his own account, and then account to the sheriff. Poll's own testimony negatives that, for he says that he had no special agreement, save that he should have the opportunity of making a settlement if he could. He admits that he collected money on sales made, but that he turned the money over every week to Klug, because Klug was in charge, and demanded the money because he was in charge; that Klug had orders to take charge, and that he, Poll, had no understanding of any kind with regard to the money taken in. The keys were in possession of Klug; the establishment was a merchant tailor's store; customers came in and orders were given and accepted and made up. Grussel himself was employed, and some outside tailors. Poll did not like Grussel around, and wished to discharge him, but this the sheriff refused to do; the other tailors refused to work, unless under agreement by the sheriff to pay them. All of this tends to show conclusively that Poll was not running the business, but that the sheriff was, although Poll might have assisted some-

what—that being to his own interest.

Now, on this state of facts, two questions arise, first, as to the possession of the sheriff; and second, as to his dealings with the attached property, and the effect thereof.

As to the possession of the sheriff herein, I think there can be no doubt; the property was in the possession of his keeper, and was never under the control of the defendant, Poll. A keeper's possession is sufficient under the first head line to Root v. R. R. Co., 45 Ohio St., 222.

As to the second question the inquiry is, first, as to the intent of the parties in such dealings; and next, their effect upon other creditors. If the intent is simply to make a colorable levy so as to give the appearance of an attachment, and thus mislead other creditors, the attachment would be fraudulent, and would be postponed as to such creditors. While, to permit a debtor to sell or dispose of attached property would tend to prove an attachment fraudulent (Train v. Wellington, 12 Mass., 495), yet it would not be conclusively so.

Of a consequence, it would not be so as to the sheriff selling with the consent of all the parties. It is a question of fact, whether the officer has abandoned his attachment, or acted so negligently as to have forfeited his rights (see, Young v. Walker, 12 N. H., 502, 508), and then it must be shown that the complaining creditor was mislead by the acts of the officer, (see, Farrington v. Edgerly, 13 Allen, 453). See also Baldwin v. Jackson, 12 Mass., 152, as to good faith of officer in his transactions. That the officer had no power to make sales if such be the law, would be an objection that could only be insisted upon by the parties to the attachment as a rule of protection to themselves; outside creditors can take advantage of such a rule, only when they show the acts of the sheriff to have operated to mislead and deceive them. The evidence in this case does not show the least bad faith upon the part of the sheriff, or the parties to the attachment; in fact, the arrangement, as at first entered into, was as said in Baldwin v. Jackson, "an innocent and laudable one", and there is not a particle of evidence in the case to show that the plaintiff was misled or deceived thereby, or hindered from prosecuting or securing his claim. In fact, there is a modicum of evidence which shows that plaintiff, through an agent of his at least, was cognizant of the arrangement, and did not seriously object thereto.

I think the equities of the case on the evidence are with the defendants, and judgment will be decreed accordingly.

W. A. Hicks & A. J. Cunningham, for Plaintiff. Fred. E. Niederhelman, for Defendant, Grussel.